*63 Based on USPS's stated purpose in establishing the pilot program, its reliance on nonpublic-forum case law in the final rule, its use of the customized postage program as a commercial enterprise, and its strengthening of the restrictions over time, the Court concludes that, regardless of how one might characterize the prior Guidelines, the customized postage program under the 2018 Regulations qualifies as a nonpublic forum.
2. Reasonableness
Plaintiffs argue that even if the customized postage program is a nonpublic forum, the Regulations are still unconstitutional because they are unreasonable.
A reminder: under the Supreme Court's forum doctrine, the government may restrict access to a nonpublic forum "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.' " Archdiocese, 897 F.3d at 318 (alteration in original) (quoting Cornelius, 473 U.S. at 800, 105 S.Ct. 3439 ). Plaintiffs do not argue that the Regulations discriminate on the basis of viewpoint.[9] The only question, then, is whether they are reasonable. "The reasonability inquiry is not a demanding one, but rather is a 'forgiving test.' " Id. at 329-30 (quoting Mansky, 138 S. Ct. at 1888 ). The challenged restriction need not "be the most reasonable or the only reasonable limitation" so long as it is a reasonable one. Id. at 330 (quoting Hodge, 799 F.3d at 1165 ).
Plaintiffs advance two reasons why the Regulations fail even this forgiving test. First, the wholesale exclusion of "political" content is too indeterminate to be reasonable under the Supreme Court's recent decision in Minnesota Voters Alliance v. Mansky, --- U.S. ----, 138 S. Ct. 1876, 201 L.Ed.2d 201 (2018). And second, the political-speech ban does not reasonably serve the purposes of the customized postage program.
a. Mansky
First, Mansky. The question there was whether Minnesota's "political apparel ban" barring voters from wearing political badges and other insignia inside a polling place on election day violated the Free Speech Clause. Id. at 1882-83. Polling places, as "government-controlled property set aside for the sole purpose of voting," are nonpublic fora; therefore, the political-apparel ban had to be both reasonable and viewpoint neutral. Id. at 1886. And, as here, because "the apparel ban ma[de] no distinction based on the speaker's political persuasion," the only question was whether the ban was " 'reasonable in light of the purpose served by the forum': voting." Id. (quoting Cornelius, 473 U.S. at 806, 105 S.Ct. 3439 ). The Supreme Court concluded that while Minnesota's purpose in adopting the ban was permissible, id. at 1887, its methods were not. "Although there is no requirement of narrow tailoring in a nonpublic forum, the State must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." Id. at 1888. And on that ground, the law did not survive the "forgiving" reasonableness test because of "the unmoored use of the term 'political' in the Minnesota law, combined with the haphazard interpretations the State has provided in official guidance and representations to this Court." Id.
*64 The D.C. Circuit recently interpreted Mansky's reasoning as follows. First, "a challenged regulation may be unreasonable, regardless of the reasons for its adoption, if it is inconsistently enforced." Archdiocese, 897 F.3d at 330 (citing Mansky, 138 S. Ct. at 1888-90 ). But beyond the postage designs Plaintiffs say were improperly approved under the previous Guidelines-already addressed above-Plaintiffs do not allege that the Regulations are inconsistently enforced today.
And second, "a restriction may also be unreasonable if it is unclear what speech would be swept in or otherwise seriously hamper consistent administration." Id. (citing Mansky, 138 S. Ct. at 1888-90 ). In Mansky, the Supreme Court faulted Minnesota for not defining the "expansive" term "political," 138 S. Ct. at 1888, and for failing to give election judges "objective, workable standards" to determine what was political and thus barred under the apparel ban, id. at 1891. Plaintiffs say that has happened here too because "the USPS regulations do not offer any determinate meaning for the word 'political' or otherwise provide discernable boundaries for the class of content it excludes." Opp'n at 22.[10] But while the term "political" may not be defined by the regulations, both "commercial" and "social" are. Under the Regulations, "[c]ommercial means intended for no purpose other than the sale of goods or services in commerce." 39 C.F.R. § 501.21(b)(1)(i). "Social means promoting or depicting people, animals, items, or events commonly associated with community relations or companionship and likely to generate invitations, announcements, notices, thank-you notes, RSVPs, or similar correspondence." Id. § 501.21(b)(1)(ii). Only then are these two categories of permissible content narrowed further by what they cannot be, including "political, religious, violent or sexual." Id. § 501.21(b)(2)(iii). In other words, Plaintiffs rely on a false equivalence between the "political" in Mansky and the "political" in the Regulations: in Mansky, the fulcrum of what is acceptable (whether apparel was "political") was not defined while here, the fulcrum (whether a design is "commercial" or "social") is. Thus, far from being "unmoored," what can come in under the customized postage program is in fact anchored by both the definitions of the inclusions and the list of exclusions.
There is another key difference between the political-speech ban in Mansky and the restrictions before this Court. In Mansky, although the state law broadly banned all "political" apparel, it was "the unmoored use of the term 'political' ... combined with [the state's] haphazard interpretations" of the term in guidance and briefing that led to the law's demise. 138 S. Ct. at 1888 (emphasis added). Minnesota's "Election Day Policy"-the state's authoritative guidance on the political-apparel ban-was internally inconsistent and so broad as to invite "erratic application" by election judges attempting to enforce the ban. Id. at 1888-90. And in briefing, Minnesota separately argued that the broad term "political" should be interpreted to proscribe "only words and symbols that an objectively reasonable observer would perceive as conveying a message about the electoral choices at issue in [the] polling place"-a standard even Minnesota's counsel struggled to apply during oral argument.
*65 Id. at 1888-89, 1891 (alteration in original). It was this effort to clarify and qualify the broad term "political" that led to the "confusing line-drawing problems" that undermined the ban. Id. at 1889.
Plaintiffs argue that here, it is the absence of "operational guidance" that will lead to "impossible line-drawing problems" because vendors like Stamps.com will be forced to decide on their own "whether an image is too 'political.' " Opp'n at 23. They round off a litany of examples of borderline, potentially political customized postage designs that would otherwise fall into the permitted "commercial" or "social" categories. For instance, "an image of a wedding cake as an advertisement for a bakery is certainly a commercial design, but what if the cake displayed rainbow colors with plastic figurines of two brides?" Id. But this misses the point. Under the Regulations, the question is not whether a design is too political; it is whether it is political at all, and thus barred, or whether it is instead "expressly allowed" as a commercial or social image. 82 Fed. Reg. at 60,118 ; see also 39 C.F.R. § 501.21(b)(2) (limiting eligibility for customized-stamp designs to images that are either "commercial" or "social"). As USPS explains, "all political content is excluded as a prophylactic matter." Reply at 19. There will undoubtedly be some borderline cases, but this simplicity contributes to the program's administrability: the Regulations establish an intentionally broad, categorical exclusion from which USPS, unlike Minnesota in Mansky, does not retreat.
The First Amendment allows the government to exclude entire categories of content from a nonpublic forum. And there will necessarily be some line drawing whenever the government excludes some category of speech. The question is whether the government "has articulated a 'sensible basis for distinguishing what may come in from what must stay out,' " Archdiocese, 897 F.3d at 330 (quoting Mansky, 138 S. Ct. at 1888 ). The Court concludes that here, USPS has: if the design is remotely political, and not "expressly allowed" by the Regulations as defined, it stays out.
b. USPS's interests
Moving to Plaintiffs' second argument on reasonableness. They contend that the Regulations do not reasonably serve either of USPS's two stated interests in adopting them: avoiding harmful misattribution to its brand and avoiding political entanglement.
USPS first says its "exclusion of political speech from the program reasonably serves USPS's legitimate interest in avoiding potential misattribution of the content in Customized Postage to USPS, especially where misattribution could harm USPS's brand and business equities." MTD at 34. Plaintiffs counter that this "misattribution worry is not even a permissible government interest." Opp'n at 28. According to Plaintiffs, "the First Amendment does not permit censorship of protected speech based on anticipated audience reactions." Id. at 27.
Plaintiffs' argument fails as a matter of law. In Cornelius, the Supreme Court explained that "the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum." 473 U.S. at 810, 105 S.Ct. 3439 (citing Perry, 460 U.S. at 52, 52 n.12, 103 S.Ct. 948 ). Federal courts of appeals have interpreted Cornelius to allow governments to reasonably limit or exclude either speakers or categories of speech "where allowing private expression in a nonpublic forum may imply government endorsement of that expression." Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 148 (2d Cir. 2004) (citing *66 Cornelius, 473 U.S. at 809, 105 S.Ct. 3439 ; United States v. Kokinda, 497 U.S. 720, 726, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) ); see also Hodge, 799 F.3d at 1165 (concluding that statute restricting expressive assemblages at Supreme Court plaza reasonably served government's interest in avoiding even the "appearance of a Court subject to political pressure" (emphasis in original)). In other words, the government may prophylactically restrict categories of speakers or subjects in a nonpublic forum without running afoul of the First Amendment, including where the potential misattribution risks the government's commercial enterprise. See, e.g., Lehman, 418 U.S. at 303-04, 94 S.Ct. 2714 (concluding that restriction barring political advertising on transit system "does not rise to the dignity of a First Amendment violation" based, in part, on the threat that "[r]evenue earned from long-term commercial advertising could be jeopardized" without the restriction).
Plaintiffs argue that even if USPS has a legitimate interest in avoiding potential misattribution, "restricting political (but not commercial) speech does not remotely fit the ends" of that interest. Opp'n at 27. In their view, instead of selectively silencing some speech, USPS should inform consumers that it permits but does not endorse the speech contained on customized postage. Id. The trouble with this argument is that "[t]here is no requirement in a nonpublic forum 'that the restriction be narrowly tailored to advance the government's interests.' " Hodge, 799 F.3d at 1164-65 (quoting Cornelius, 473 U.S. at 809, 105 S.Ct. 3439 ). Instead, a restriction need only be "consistent with the government's legitimate interest in maintaining the property for its dedicated use." Archdiocese, 897 F.3d at 330 (emphasis added) (citing Perry, 460 U.S. at 46, 51, 103 S.Ct. 948 ). Plaintiffs do not argue that the Regulations are inconsistent with the Postal Service's interest in avoiding misattribution.
USPS next says that its "restriction on political content [also] reasonably serves USPS's 'particularly weighty' governmental interest in avoiding political entanglement, 'given the history of the Postal Service and its problematic historical associations with partisan politics.' " MTD at 34 (quoting Del Gallo v. Parent, 557 F.3d 58, 73 (1st Cir. 2009) ). Plaintiffs do not contest that USPS has a legitimate interest in avoiding at least partisan entanglement but assert that it does not have a similar interest in avoiding entanglement with political issues more generally because the Postal Service's problematic history is associated only with partisan politics and electioneering. Opp'n at 29. But this is another tailoring argument and, as explained above, there is no requirement that a rule restricting access to a nonpublic forum be narrowly tailored. See Hodge, 799 F.3d at 1167 (explaining that Congress was "under no obligation" to limit regulations on assembly in Supreme Court plaza "so as to encompass only those forms of expressive activity ... that most acutely implicate the government's concerns" and instead "could paint with a broader brush"). Thus, again, USPS is entitled to actively regulate private speech in a nonpublic forum so long as its means are consistent with its purpose.
Finally, restrictions in nonpublic fora are more likely to be considered reasonable where alternative channels of communication remain open. See Perry, 460 U.S. at 53, 103 S.Ct. 948 ("The reasonableness of limitations on [the defendant's] access to the school mail system is also supported by the substantial alternative channels that remain open for union-teacher communication."). As USPS points out, Plaintiffs could instead print postcards or envelopes with the proposed design that *67 would not pose the same risks of misattribution and entanglement. MTD at 35. Plaintiffs do not dispute that they "had alternative means to engage in speech," Opp'n at 30, and counter only that the Regulations are otherwise unreasonable because they are indeterminate and unrelated to USPS's invoked interests. As explained above, the Court disagrees with Plaintiffs on these grounds.
* * *
In all, the Court concludes that the 2018 Regulations satisfy the requirements for restrictions on private speech in nonpublic fora. Unlike the political-apparel ban in Mansky, the Regulations are not fatally indeterminate; rather, as a categorical ban on political speech, they provide sufficiently clear guidance on what can come in and what must stay out. The Regulations are also consistent with USPS's legitimate interests in avoiding political entanglement and potential misattribution of postage designs that could harm USPS's business interests.
IV. Conclusion
For the foregoing reasons, the Court will dismiss the claims originally set forth in Plaintiffs' First Amended Complaint as moot and the supplemental claims set forth in Plaintiffs' Supplemental Complaint for failure to state a claim. The Court will also deny as moot Plaintiffs' Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

The D.C. Circuit recently emphasized that categorical subject-matter restrictions are not viewpoint-based restrictions. Id. at 319. Therefore, that the Regulations exclude entire categories, like political or religious speech, does not constitute viewpoint discrimination.

Contrary to USPS's framing, the Court does not take Plaintiffs' argument to be that under Mansky, all " 'bans on "political speech" in nonpublic forums' are per se 'unreasonable[.]' " Reply at 16 (selectively quoting Opp'n at 25). To the extent Plaintiffs do so argue, the D.C. Circuit rejected a similar interpretation in Archdiocese, 897 F.3d at 324-25.