# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 15, 2022        Decided April 14, 2023

No. 21-5283

ANATOL ZUKERMAN AND CHARLES KRAUSE REPORTING, LLC,
A D.C. LIMITED LIABILITY COMPANY,
APPELLANTS

v.

UNITED STATES POSTAL SERVICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02131)

———

*Julius P. Taranto* argued the cause for appellants.  With him on the briefs were *K. Chris Todd* and *Eric J. Maier*.

*Joshua M. Salzman*, Attorney, U.S. Department of Justice, argued the cause for appellee.  With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Daniel Tenny*, Attorney.

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  Beginning in about 2005, the United States Postal Service ("USPS" or "Postal Service") offered a customized postage program. Customers could navigate to a website of an authorized third-party vendor, upload a custom design including text or images, pay a fee, print their custom stamps, and then use or hold their stamps as they saw fit. Anatol Zukerman sought the services of the customized postage program to print copies of an adaptation of his drawing of Uncle Sam being strangled by a snake labeled "Citizens United" and configured as a dollar sign. However, acting through Zazzle, Inc., a third-party vendor, USPS rejected Zukerman's proposed design due to its partisan message, even as it accepted other customers' postage designs with obvious political content. In 2015, Zukerman filed a complaint in the District Court against the Postal Service contending that USPS's customized postage program violated the prohibition against viewpoint discrimination under the First Amendment. *See Zukerman v. USPS*, 961 F.3d 431, 436-41 (D.C. Cir. 2020).

In 2018, while Zukerman's case was pending in the District Court, the Postal Service amended the guidelines of its customized postage program to prohibit, *inter alia*, all "political" stamps. Zukerman filed a Supplemental Complaint incorporating by reference every allegation from his First Amended Complaint and further alleging that the 2018 Guidelines was unconstitutional on its face. *Id*. at 435. The District Court dismissed the case, holding that the new guidelines were not facially unconstitutional and that Zukerman's as-applied challenge to his initial rejection was mooted by the new guidelines. *Zukerman v. USPS*, 384 F. Supp. 3d 44, 53-54, 67 (D.D.C. 2019). Zukerman appealed to

this court. On appeal, we reversed and remanded, holding that the new guidelines' ban on "political" stamps was facially unconstitutional and that Zukerman's as-applied challenge was not moot because the effects of his injury persisted. *Zukerman*, 961 F.3d at 435-36. The court noted in particular that "Zukerman still does not have his stamps" and no intervening events have "invalidated any postage issued under the prior policy." *Id.* at 443.

Shortly after this court reversed the District Court's first decision and remanded the case for further proceedings, the Postal Service shuttered the customized postage program entirely. Zukerman then asked the District Court to issue "an order requiring USPS to print valid U.S. postage bearing his *Citizens United* drawing or, failing that, to 'make reasonable efforts' to recall from circulation or 'decertify' all political designs that it previously issued under the program." *Zukerman v. USPS*, 567 F. Supp. 3d 161, 164 (D.D.C. 2021). The District Court rejected these requests for injunctive relief as infeasible, and Zukerman suggested no viable alternatives. Because the customized postage program was no longer in operation, the District Court found the likelihood of any future violations "sufficiently remote to make" injunctive relief inappropriate. *Id*. at 178 (internal quotation marks omitted). The court therefore granted summary judgment and declaratory relief to Zukerman but declined to award injunctive relief. *Zukerman v. USPS*, No. 15-CV-2131, 2021 WL 5310572, at *3 (D.D.C. Nov. 15, 2021). Zukerman now appeals the District Court's denial of injunctive relief. We affirm.

We first note that Zukerman has standing to seek injunctive and declaratory relief. The Postal Service rejected his customized stamp design due to its partisan message even as USPS accepted other customers' postage designs with obvious political content. As a result, Zukerman suffered viewpoint

discrimination and his continuing inability to speak through custom stamps while others can is sufficient to support standing. However, as we explain in the opinion below, the fact that Zukerman has suffered injury sufficient to confer standing to seek injunctive relief does not necessarily make such relief appropriate on the merits. The District Court pointed out that "developments over the last six years have resulted in Zukerman obtaining nearly everything he originally sought in this case. . . . [T]he program, its regulations, its vendors, and any accompanying speech restrictions and viewpoint discriminatory conduct are no more. All that is left (apart from attorneys' fees) is Zukerman's request for declaratory relief." *Id*. The District Court thus entered an Order granting summary judgment for Zukerman and declaring that USPS is liable for viewpoint discrimination in violation of the First Amendment. We find no error in this judgment.

## I.    BACKGROUND

### A.  The Original Litigation Before the District Court

In 2013, Anatol Zukerman sought to promote his artwork by printing one of his pieces criticizing the Supreme Court's decision in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), on a customized postage stamp. Zukerman submitted his design to Zazzle, Inc., a private vendor with delegated authority to print customized postage on behalf of the Postal Service. However, Zazzle rejected the design for violating its guidelines prohibiting stamps that are "primarily partisan or political in nature." Joint Appendix ("J.A.") 293. Zukerman and the operator of his art gallery, Charles Krause Reporting, LLC, filed suit in the District Court on December 9, 2015, alleging that this denial constituted viewpoint discrimination in violation of the First and Fifth Amendments.

Zukerman's first amended complaint sought six forms of relief: (1) a declaration that the Postal Service had engaged in unlawful content and viewpoint discrimination; (2) a permanent injunction barring the Postal Service from continuing to engage in the allegedly unlawful conduct; (3) a permanent injunction barring the Postal Service from delegating the function of making and selling postage to any person that engages in content or viewpoint discrimination; (4) an order directing the Postal Service not to permit Zazzle to make and sell U.S. custom postage stamps unless and until it agreed to print the *Citizens United* stamp; and (5) an order requiring the Postal Service to refrain from enforcing 39 C.F.R. § 501.7(c), which governs providers of Postal Evidencing Systems, insofar as it applies to the custom stamp program; (6) an award of costs and reasonable attorneys' fees and expenses; and (7) a general prayer for such other relief as the court deemed proper. J.A. 176. In 2018, in response to Zukerman's suit, the Postal Service and Postal Regulatory Commission promulgated a new rule that prohibited "[a]ny depiction of political, religious, violent or sexual content." 39 C.F.R. § 501.21(b) (2018) ("2018 Guidelines"). Additionally, the Postal Service terminated Zazzle as a customized postage provider.

Zukerman amended his first amended complaint with a supplemental complaint incorporating a First Amendment challenge to the 2018 Guidelines. However, in April 2019, the District Court granted the Postal Service's motion to dismiss on the grounds that the facial challenge to the 2018 Guidelines failed as a matter of law, and the challenge to Zazzle's rejection of Zukerman's stamp was moot because the 2018 Guidelines supplanted the original policy that was used to justify the rejection of Zukerman's customized postage design. *Zukerman*, 384 F. Supp. 3d at 53-54, 67. Zukerman appealed to this court.

**B. The First Appeal to This Court**

In June 2020, this court reversed the judgment of the District Court. We held that the 2018 Guidelines were facially unconstitutional because the ban on all "political" postage failed to offer objective, workable standards. *Zukerman*, 961 F.3d at 447.

The court also held that the viewpoint discrimination claim was not moot because the Postal Service had not "eradicated the effects of its alleged violations." *Id.* at 443. In reaching this conclusion, we pointed out that the injury persisted because "Zukerman still does not have his stamps" and no intervening events have "invalidated any postage issued under the prior policy." *Id.* In other words, Zukerman was clearly injured when the Postal Service rejected his customized stamp design due to its partisan message even as USPS accepted other customers' postage designs with obvious political content and the effects of the injury persisted. Therefore, because Zukerman's viewpoint discrimination claim was not moot, the case was remanded for further proceedings. *Id.* at 446.

**C. Remand**

Shortly after this court's decision issued, the Postal Service terminated the customized postage program and ended its relationships with all vendors of customized postage. *See* 85 Fed. Reg. 41,394 (July 10, 2020). On remand, the District Court granted summary judgment in favor of Zukerman on his viewpoint discrimination claim. *Zukerman*, 567 F. Supp. 3d at 174-76. However, because the customized postage program no longer existed, the District Court denied Zukerman's request for injunctive relief.

Specifically, Zukerman sought an injunction to force the Postal Service to print or allow Zukerman himself to print valid stamps bearing Zukerman's design. *Id.* at 177-78. The District Court denied this relief because the termination of the customized postage program rendered the likelihood of further violations remote, granting the relief would force the Postal Service to resurrect the entire program, and it was unclear that the Postal Service even had the necessary authority to print any more customized stamps. *Id.* at 178-79.

Alternatively, Zukerman sought an injunction requiring the Postal Service to recall, repurchase, or invalidate outstanding political postage. *Id.* at 179. The District Court rejected this suggestion because "[t]hat exercise would require the Postal Service to engage in the same 'haphazard interpretation[ ]' of the term 'political' that led the D.C. Circuit to strike down the 2018 version of USPS's content guidelines." *Id.* at 164. Additionally, the court found that it would be a "massive drain on public resources" to require the Postal Service to review each design to isolate the relatively few potentially "political" stamps. *Id.* at 179. Finally, the record indicates that the Postal Service has no way to sort customized from non-customized stamps and has neither information on who owns existing customized postage nor authority to force Zazzle to seek out this information. *Id.*; *see also* J.A. 896-97, 1518.

The District Court requested supplemental briefing on alternative remedies. *Zukerman*, 567 F. Supp. 3d at 179. However, Zukerman chose "to stick to his guns" and demand that the Postal Service print his design. *Zukerman*, 2021 WL 5310572, at *2. The District Court again declined, summarizing its reasoning as follows:

First, USPS had shuttered its customized postage program and severed contractual ties with the

8

program's vendors, which raised legitimate questions concerning whether USPS retained the legal authority to print the design. Second, USPS's termination of the program—its closure of the forum, in First Amendment parlance—virtually eliminated the likelihood of any future violation. Third, ordering the stamp to be printed could well open the door to similar requests for relief by others whose stamp designs were rejected on political-content grounds, further entangling USPS in political speech. Fourth, USPS was less responsible for the First Amendment violation than its vendor, which had authorized a handful of politically oriented designs in contravention of USPS guidelines. And fifth, the number of political designs that the vendor approved (several of which were ordered by Mr. Zukerman's counsel in this litigation) was infinitesimal relative to the number of design submissions that the vender reviewed in the course of USPS's longstanding customized postage program. All this counseled in favor of a more modest remedy.

*Id.* at \*1. Accordingly, the District Court granted summary judgment and declaratory relief only. *Id.* at \*2-\*3. Zukerman now appeals.

## II.   ANALYSIS

### A. Standard of Review

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Similarly, "the district court's decision whether to grant declaratory judgment is

reviewed for abuse of discretion." *Jackson v. Culinary Sch. of Wash., Ltd.*, 59 F.3d 254, 255 (D.C. Cir. 1995).

## B. Standing

As the Supreme Court has explained:

Trained on whether the plaintiff is a proper party to bring a particular lawsuit, standing is one element of the Constitution's case-or-controversy limitation on federal judicial authority, expressed in Article III of the Constitution. To qualify as a party with standing to litigate, [a party] must show, first and foremost, injury in the form of invasion of a legally protected interest that is concrete and particularized and actual or imminent. The [party's] injury also must be fairly traceable to the challenged action and redressable by a favorable ruling.

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 799-800 (2015) (citations omitted) (cleaned up). And "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The District Court found that Zukerman had clearly established standing sufficient to pursue this action:

Zukerman initiated this action in December 2015. In the months preceding and immediately following that date, Zazzle fulfilled orders for at least 25 sheets of postage advocating for political candidates. Additionally, from the time that Zukerman placed his order until years *after* he brought suit, Zazzle displayed various political postage on its webpage as available

> for sale. All the while, Zazzle barred Zukerman from printing his proposed *Citizens United* stamp. Zukerman has thus established injury-in-fact.

*Zukerman*, 567 F. Supp. 3d at 170. The District Court's opinion details the ample evidence in the record showing that Zukerman satisfied his burden of proving standing sufficient to justify summary judgment on the merits. *Id*. at 169-71.

We will consider the matter, however, because "we have an obligation to assure ourselves" of a litigant's standing under Article III. *Friends of the Earth*, 528 U.S. at 180. On the uncontested record before us, we hold that Zukerman has standing to seek injunctive and declaratory relief.

In order to satisfy the requirements of standing in this case, Zukerman must demonstrate that he "sustained . . . some direct injury as the result of the challenged official conduct and the injury . . . must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotation marks omitted). Straightforwardly, Zukerman sustained a real, concrete injury because he was denied customized postage due to the Postal Service's unlawful viewpoint discrimination. *See Heckler v. Mathews*, 465 U.S. 728, 735, 737-38 (1984) (plaintiffs denied certain retirement benefits due to defendant's unlawful discrimination had standing). He has standing to seek injunctive and declaratory relief to remedy the viewpoint discrimination that he has faced, *i.e.*, his continued inability to use, hold, or sell the stamp he was denied as a result of that discrimination.

During oral argument before this court, counsel for the Postal Service seemed to suggest that the Court's decision in *Lyons* militates against a finding that Zukerman has standing in

this case. We disagree. *Lyons* involved a plaintiff who had been the victim of an illegal chokehold by Los Angeles police officers. In a suit against the police officers and the city, Lyons claimed that, because there was a likelihood that he would be stopped again and subjected to the unlawful use of force by officers, he had standing to seek injunctive and declaratory relief against the city's alleged chokehold policy. *Lyons*, 461 U.S. at 97-99. The Supreme Court held that Lyons did not have standing to seek prospective relief because he could not show he was "likely to suffer future injury from the use of the chokeholds by police officers" and that it was "speculative" that "he will again experience injury as the result of that practice even if continued." *Id.* at 105, 109. However, the Court made it clear that Lyons *did* have standing to sue for the injuries that he had suffered in the past when he was a victim of an unlawful chokehold. *Id.* at 109, 111. This case is strikingly different from *Lyons*.

Here, Zukerman seeks injunctive and declaratory relief for his past injury. Unlike the plaintiff in *Lyons*, Zukerman does not seek to prospectively challenge any policies of the Postal Service's now-defunct customized postage program. Rather, Zukerman seeks relief for viewpoint discrimination that came as a result of USPS's rejection of his proposed design due to its partisan message while accepting other customers' postage designs with obvious political content. He also seeks relief for the continuing effects of that discrimination, which is telling evidence of the injury he initially suffered in 2015. *Zukerman*, 961 F.3d at 443 (noting that "the Postal Service still recognizes other previously-issued political designs as valid postage"). In sum, the viewpoint discrimination Zukerman first faced in 2015 and the continuing effects of that discrimination are sufficient to give him standing. *See O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("[p]ast exposure to illegal conduct" "show[s] a present case or controversy" sufficient to support

standing when accompanied by "continuing, present adverse effects"); *Sullivan v. Benningfield*, 920 F.3d 401, 409 (6th Cir. 2019) (past unequal distribution of sentencing credits resulted in "continuing, adverse effects" that conferred standing on inmates who challenged the distribution of sentencing credits).

The main point here is that Zukerman does not seek prospective relief against any alleged future rights violations. Indeed, Zukerman's injury does not depend on any future conduct at all. It does not depend on any future discrimination by the Postal Service; after all, the customized postage program has already been shuttered. Nor does it depend on any individual owners of grandfathered political postage using their stamps. And it does not matter that some of the other customers who benefitted from USPS's viewpoint discrimination may never use their stamps. What matters is that they were allowed to secure stamps with political messages, to use, sell, or hold as they saw fit, while Zukerman was discriminatorily denied this opportunity.

Zukerman's injury stems from the difference in government treatment of his stamp vis-à-vis stamps with political messages from other customers. *See Heckler*, 465 U.S. at 737-38 (standing did not depend on substantive right to any particular benefit, but rather discriminatory treatment in right to receive benefits writ large). So understood, Zukerman was injured the moment the Postal Service refused to print and recognize his stamp. The effects of that past injury remain unremedied because the Postal Service continues to officially recognize some outstanding political postage while Zukerman wants for his stamp. Thus, Zukerman plainly has standing to seek injunctive and declaratory relief.

### C. Injunctive Relief

Although Zukerman has suffered an injury sufficient to confer standing to seek injunctive relief, that does not necessarily make injunctive relief appropriate on the merits. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982). As the Supreme Court explained in *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953):

> The purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The [District Court's] decision is based on all the circumstances; [the District Court's] discretion is necessarily broad and a strong showing of abuse must be made to reverse it.

*Id.* at 633 (citations omitted). We find no abuse of discretion in this case.

A plaintiff seeking a permanent injunction "must satisfy a four-factor test before a court may grant such relief." *eBay*, 547 U.S. at 391. The plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* When the defendant is the government, factors (3) and (4) merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The parties do not dispute that Zukerman (1) suffered an irreparable injury and (2) lacks an adequate remedy at law. But the District Court was within its discretion to conclude that the combined (3) balance of equities and (4) public interest factors weighed against issuing injunctive relief. We find persuasive the District Court's November 15, 2021 memorandum. *See Zukerman*, 2021 WL 5310572, at *1.

Regarding Zukerman's demand to have the *Citizens United* stamp printed, the District Court found that granting such injunctive relief would require the Postal Service to leap over legal and logistical hurdles to resurrect the now-terminated program just to provide Zukerman his preferred relief. *See Zukerman*, 567 F. Supp. 3d at 178. And doing so would risk opening the door to future demands by similarly situated plaintiffs to have their political stamps printed as well. Not only would this force the Postal Service to revive a program it has terminated, but it would also risk entangling the Postal Service with the political messaging of the customized stamps. The District Court was within its discretion to credit the Postal Service's interest in avoiding these entanglements. *See Del Gallo v. Parent*, 557 F.3d 58, 73 (1st Cir. 2009) ("It is well-established that a politically neutral government entity's interest in avoiding the appearance of political entanglement is a valid justification for limiting speech in a non-public forum. . . . This justification is particularly weighty given the history of the Postal Service and its problematic historical associations with partisan politics.").

Regarding Zukerman's alternative demand for the Postal Service to recall, repurchase, or invalidate outstanding political postage, the District Court found that granting injunctive relief of this sort is simply infeasible. The record indicates that the Postal Service does not currently have any way to identify who holds outstanding customized postage, J.A. 896-97, nor does it

have a way to automatically filter customized from non-customized postage, J.A. 1518-19. Nor would it serve the public interest to require the Postal Service to manually sift through every existing stamp design to isolate the relatively few "political" ones that may be extant. More significantly, we have already held that determining which postage would count as "political" under the 2018 Guidelines would have been so unworkable that the ban on "political" content was facially unconstitutional. *Zukerman*, 961 F.3d at 447-52.

It bears emphasizing that there are only an "infinitesimal" number of outstanding stamps that are plainly "political" in nature. *Zukerman*, 2021 WL 5310572, at *1; *Zukerman*, 567 F. Supp. 3d at 169-70 (estimating there are only 25 sheets of such stamps). Zukerman's proposed injunctive relief – which would require either resurrecting a now-defunct program or draining public resources to sift through all outstanding postage – are broad remedies incommensurate with the injury sought to be remedied. The District Court invited supplemental briefing on narrower remedies, but Zukerman declined to offer any alternative solutions. *See Zukerman*, 2021 WL 5310572, at *2. The District Court did not abuse its discretion in concluding that the burden on the Postal Service and the public did not support Zukerman's proposed injunctive relief.

Zukerman relies heavily on the so-called "complete relief" principle to suggest that equity imposes on the court a duty to cure his injury to the fullest extent conceivable. *See* Appellant's Br. 23-31. This is a bit of an overstatement. The "complete relief" principle holds only that a court should not supply *more* than complete relief in forming an injunction. *See Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994); *United States v. Alaw*, 327 F.3d 1217, 1220 (D.C. Cir. 2003). Moreover, the principle embraces notions of flexibility and discretion in the courts to tailor equitable remedies; the

principle is not meant to endorse a simplistic, unnuanced command to judges to eradicate all vestiges of an injury in awarding equitable relief. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1970) ("[T]he scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

Here, any ongoing constitutional violation – the Postal Service's viewpoint discrimination – ended with the shuttering of the customized postage program. The Postal Service now applies only a viewpoint neutral policy of honoring existing customized postage, regardless of its content, while issuing no new customized postage at all. As the District Court stressed, Zukerman's "complaint targeted viewpoint discriminatory conduct occurring within the customized stamp program, and he sought to enjoin regulations and speech restrictions as applied to or with respect to that program. . . . That goal has been largely achieved." *Zukerman*, 2021 WL 5310572, at *2 (cleaned up).

"In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant . . . . [I]f the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). Thus, given the particular circumstances of this case – including Zukerman prevailing on most points and the problems that would be encountered if Zukerman's demands for injunctive relief were adopted – we have no trouble in concluding that the District Court did not abuse its discretion in denying injunctive relief.

### D. Declaratory Relief

In addition to appealing the denial of injunctive relief, Zukerman also complains about the grant of declaratory relief in his favor. He argues as follows:

> The complete relief principle here required the district court to eradicate Plaintiffs' ongoing injury. . . . Even if something short of complete relief could suffice, the district court's declaratory judgment was not even partial relief; it was no remedy at all. The order did nothing to alleviate Plaintiffs' injury and changed nothing between the parties: USPS does not have to do anything and never will. Meanwhile Plaintiffs still cannot speak in the forum and never will be able to, even as others already in possession of political customized postage can continue to use it in perpetuity. Granting only such illusory relief was an abuse of discretion.

Appellant's Br. 22-23. Zukerman's arguments are misguided.

First, we have already explained that Zukerman is mistaken in assuming that he is entitled to injunctive relief merely because he has standing to claim it. He is also wrong in assuming that a party's claim for relief necessarily means that the party is entitled to *all* that he has requested. As noted above, a claim for equitable relief necessarily involves a weighing of the equities by the court. *eBay*, 547 U.S. at 391. And the District Court's discretion in weighing a request for injunctive relief "is necessarily broad and a strong showing of abuse must be made to reverse it." *W. T. Grant Co.*, 345 U.S. at 633. The District Court did not abuse its discretion in denying injunctive relief and granting declaratory relief.

Second, Zukerman seems to assume that declaratory relief "is outside the Court's jurisdiction in the absence of other remedies." *Zukerman*, 2021 WL 5310572, at \*2. This is not the law. The Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. Zukerman specifically requested declaratory relief in his complaint, along with injunctive relief. There is nothing in section 2201 that says that a court is foreclosed from granting declaratory relief if it is the only relief awarded. In fact, section 2201 clearly says that declaratory relief may be granted "whether or not further relief is or could be sought." *Id*. Thus, the District Court correctly explained that "a request for declaratory relief may be considered independently of whether other forms of relief are appropriate." *Zukerman*, 2021 WL 5310572, at \*3 (citing *Powell v. McCormack*, 395 U.S. 486, 517-18 (1969)); *see also Steffel v. Thompson*, 415 U.S. 452, 475 (1974) (stating in a different context that, "regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded").

Third, Zukerman is also off the mark in suggesting that declaratory relief is illusory. A declaratory judgment may serve as the basis for issuance of a later injunction to give effect to the declaratory judgment and it may have res judicata effect in later actions. *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971); *see also Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 547 & n.1 (D.C. Cir. 1988) (giving effect to 28 U.S.C. § 2202, which states: "Further necessary or proper relief based on a declaratory judgment or decree may be granted,

after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."). In this case, the declaratory judgment serves important functions in confirming the end of this protracted litigation, clarifying the legal relations between Zukerman and the Postal Service, and establishing that the Postal Service's conduct on this record constituted viewpoint discrimination. This ensures that the Postal Service cannot engage in similar discriminatory conduct towards Zukerman or anyone else in the future.

In assessing the propriety of granting declaratory relief, we review the District Court's action for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995). In *Wilton*, the Supreme Court affirmed the uniquely discretionary nature of the Declaratory Judgment Act, saying that it is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' . . . When all is said and done . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Id.* at 287 (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 243 (1952)).

On the record before us, we have little trouble in concluding that the District Court did not abuse its discretion in awarding Zukerman declaratory relief. The court thoughtfully considered the evidence, weighed the equities, and entered an eminently reasonable judgment.

–––––––

There is one additional point that warrants mention. Even though Zukerman may have preferred injunctive relief over (or in addition to) declaratory relief, he is the prevailing party with respect to the District Court's declaratory judgment. Therefore, he has no right to seek review on this matter. A prevailing party

may sometimes appeal a favorable judgment to, for instance, seek a greater damages award, *see, e.g.*, *United States v. McAndrews*, 12 F.3d 273, 278 (1st Cir. 1993), or challenge an adverse collateral ruling that may affect or limit the future conduct of the party, *see Camreta v. Greene*, 563 U.S. 692, 704-05 (2011) (permitting officers to challenge holding that their conduct violated the Constitution even though they received qualified immunity). Zukerman, however, does not fit any exception that would allow this court to entertain his challenge to the declaratory judgment issued in his favor. We have affirmed above the District Court's decision to grant declaratory relief because Zukerman attempts erroneously to tie the grant of declaratory relief to the denial of injunctive relief, the latter of which is appealable. But, because declaratory relief may be granted independently of injunctive relief, we may also dispose of Zukerman's objection to declaratory relief under the default rule that "[a] party may not appeal from a judgment or decree in his favor." *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939).

### III.  CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court granting summary judgment, awarding declaratory relief, and denying injunctive relief.

*So ordered.*